# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| ESTATE OF HORST G. BLUME and HEADACHE & PAIN CONTROL CENTER, P.C., | |
| Plaintiffs, | CASE NO.: 03 CV 4117 |
| vs. | ORDER |
| MARIAN HEALTH CENTER and its successor-in-interest MERCY MEDICAL CENTER-SIOUX CITY, | |
| Defendants. | |

_____

## I.    INTRODUCTION

Plaintiffs, Estate of Horst G. Blume and Headache & Pain Control Center, P.C. ("Dr. Blume" or "Plaintiff"), filed a claim against Defendant, Marian Health Center and its successor-in-interest Mercy Medical Center-Sioux City ("Mercy" or "Defendant") on December 2, 2003, for anti-trust activities, violation of due process, breach of contract, reckless infliction of emotional distress, tortuous interference of an existing contract, and tortuous interference with existing and future patients. All claims, except the breach of contract, were dismissed on April 19, 2005. After extensive briefing and hearings, this Court

1

granted summary judgment on the breach of contract claim in favor of plaintiffs. On November 6, 2006 to November 9, 2006, a four day jury trial was held to determine the extent of damages, if any, plaintiffs were entitled to. The jury returned with a verdict for Dr. Blume in the total amount of $146,025.00. Following this trial, Mercy renewed their motion for judgment as a matter of law or in the alternative for a new trial. (See Docket No. 217.) This Court held a hearing on January 11, 2007, and now denies defendant's motion for judgment as a matter of law or in the alternative for a new trial.

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for a matter of law if "for any reason, the court does not grant a motion for judgment as a matter of law at the close of all evidence . . . ." "A judgment as a matter of law is appropriate if 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."' Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 899-900 (8th Cir. 2006) (quoting Fed.R.Civ.P. 50(a)(1)). In reviewing the motion, the court must "grant [the nonmoving

Case 5:03-cv-04117-DEO   Document 222   Filed 03/14/07   Page 2 of 37

party] all reasonable inferences and view the facts in the light most favorable to [the nonmoving party]. Id. at 900 (citing Webner v. Titan Distrib., Inc., 267 F.3d 828, 833 (8th Cir. 2001)). The court must grant judgment as a matter of law "when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict." Day v. Toman, 266 F.3d 831, 836 (8th Cir. 2001) (citing Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 634 (8th Cir. 1998)).

Federal Rule of Civil Procedure 59 (a) states in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

"[A]uthority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). The trial court is not, however, "'free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or

conclusions or because judges feel that other results are more reasonable.'" _Fireman's Fund Ins. Co. v. Aalco Wrecking Co._, 466 F.2d 179, 186 (8th Cir. 1972) (quoting _Tennant v. Peoria & Pekin Union Ry. Co._, 321 U.S. 29, 35 (1944)). Ultimately, "[w]hen through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." _White v. Pence_, 961 F.2d 776, 780 (8th Cir. 1992).

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." _Celotex Corp. v. Catrett_, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); _In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig._, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); _Allison v. Flexway Trucking, Inc._, 28 F.3d 64, 66 (8th Cir. 1994).

## III.     DISCUSSION

4

**1. Immunity Under Health Care Quality Improvement Act**

**A. Hospitals as Professional Review Bodies**

Mercy argues it is immune from civil money damages under the Health Care Quality Improvement Act ("HCQIA"). Docket No. 217-2 at 3-14. In the brief in support of the defendant's renewed motion for judgment as a matter of law or in the alternative for a new trial, the defendant states as follows:

> In three separate written opinions and for three separate reasons, the Court has rejected Mercy's claim for immunity under the Health Care Quality Improvement Act of 1986 (HCQIA). 42 U.S.C. Section 11101, et seq., which provides that a professional review body shall not be liable for damages under any law of any state with respect to a professional review action unless the opposing party overcomes a rebuttable presumption of compliance. It is contended that Mercy believes that the Court's previous opinions did not correctly consider HCQIA under the standard set forth in the plain text of the Act itself and supported by uniform case law. Docket 217 at 3.

Congress believed that effective peer review would be furthered "by granting limited immunity from suits for money damages to participants in professional review actions." Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 632 (3rd Cir. 1996) (quoting H.R. Rep. No. 903, 99th Cong., 2d Sess. 2 (1986)).

Under the HCQIA, professional review bodies are granted immunity if certain procedures are followed. 42 U.S.C. § 11112(a). *See* Sugarbaker v. SSM Health Care d/b/a St. Marys Health Center, 190 F.3d 905, 912 (8th Cir. 1999). This Court has earlier ruled that Mercy Hospital is not a professional review body and therefore not immune from suit under the HCQIA. See Docket No. 85, at 3-4. This Court stated "This Court knows of no legal precedent which would allow it to include a hospital under the word "person" in the immunity statues and has not been provided any pertinent citation by the defendant which would persuade it to the contrary." Docket No. 85, at 4. This Court is persuaded that it was mistaken in its earlier ruling in that it did not have appropriate precedents to consider. The Court now wishes to clarify its previous rulings.

In 42 U.S.C. §11111(a)(1), Congress stated

> If a professional review action (as defined in §11151(9) of this title) of a professional review body meets all the standards specified in section 11112(a) of this title, except as provided by subsection (b) of this section-
>
> (A) the professional review body,
>
> (B) any person acting as a member or staff to the body,

6

Case 5:03-cv-04117-DEO   Document 222   Filed 03/14/07   Page 6 of 37

> (C) any person under a contract or other
> formal agreement with the body, and
>
> (D) any person who participates with or
> assists the body with respect to the
> action, shall not be liable in damages
> under any law of the United States or of
> any State with respect to the action. 42
> U.S.C. §11111.

Plaintiffs did not contest that the action was a professional review action. "Professional review body" is defined as "a health care entity..." 42 U.S.C. §11151(11). "Health care entity" is defined as "a hospital that is licensed to provide health care services by the State in which it is located." 42 U.S.C. §11151(4)(A). Following this statute, a professional review body includes a hospital. Therefore, because Mercy is a hospital licensed to provide health care services by the State of Iowa, this Court clarifies it's earlier ruling and now finds the HCQIA applies to hospitals as well as to individual doctors who practice at hospitals.

**B.  42 U.S.C. §11112**

Under the HCQIA, four separate and distinct steps are necessary for immunity to attach to the peer review hearings. Specifically, for there to be immunity under the HCQIA, the professional review action must be taken:

(1) in the reasonable belief that the action was in furtherance of quality health care;

(2) after a reasonable effort to obtain the facts of the matter;

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and,

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). 42 U.S.C. §11112(a).

Plaintiffs argue that Mercy is not entitled to immunity because it did not satisfy some of the objective standards of §11112(a) set out above. It is important to remember that Mercy is presumed to have complied with the standards, and Dr. Blume bears the burden of rebutting the presumption by a preponderance of the evidence. 42 U.S.C. §11112(a). "A professional review action shall be presumed to have met the preceding standards . . . unless the presumption is rebutted by a preponderance of the evidence." Id. This Court will address each requirement for immunity.

**i. In the reasonable belief that the action was in furtherance of quality health care**

Our objective inquiry focuses on whether the professional

action taken against Dr. Blume was taken "in the reasonable belief that the action was in furtherance of quality health care." 42 U.S.C. §11111(2)(a)(1). <u>Sugarbaker</u>, 190 F.3d at 913.

Dr. Blume alleges that the actions were not taken in the reasonable belief that the actions were in furtherance of quality health care, and instead were taken to deprive him of privileges at Mercy and thereby eliminate him as an surgical competitor. However, since there never was a hearing and Blume had no opportunity to present any evidence, these claims are unsubstantiated and this Court finds these allegations do not rebut this presumption. There is appreciable evidence on the record to show that Mercy was acting in furtherance of quality health care, as the Executive Committee initiated this peer review process after several complaints and incident reports were filed against Dr. Blume. This Court finds that Dr. Blume fails to rebut the presumption of immunity "that the actions be taken (1) In the reasonable belief that the action was in furtherance of quality health care."

**ii. After a reasonable effort to obtain the facts of the matter**

This Court does not find that Mercy met the second

requirement, "[a]fter a reasonable effort to obtain the facts of the matter." In assessing this issue, we consider "whether the totality of the process leading up to the Board's 'professional review action'... [evinces] a reasonable effort to obtain the facts of the matter." <u>Mathews</u>, 87 F.3d at 637.

There is no doubt that Mercy had some real complaints against Dr. Blume. Mercy had incident reports which laid out these complaints. However, there was quite an unreasonable delay, after Dr. Blume was suspended, before Dr. Blume was given copies of these reports.

Therefore, there was an inappropriate delay because Mercy did not allow Dr. Blume access to these incident reports, or any other precise information that would help alert Dr. Blume to what the hospital contentions were. These incident reports were one sided. There was no effort by the hospital to obtain any facts in contrast to these incident reports. Dr. Blume never had the opportunity to appear at a hearing to examine and cross examine witnesses and present evidence in response to the reports. Therefore, this Court has been and is persuaded that there was no reasonable fact finding done by the defendant.

**iii. After adequate notice and hearing procedures are**

10

**afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances**

Under the third requirement, Dr. Blume must rebut the presumption that the peer review committee action was taken "after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3). Adequate notice and hearing procedures are defined in 42 U.S.C. §11112(b), which states

> A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):
>
> (1) Notice of proposed action. The physician has been given notice stating–
>
> (A) (i) that a professional review action has been proposed to be taken against the physician,
> (ii) reasons for the proposed action,
> (B) (i) that the physician has the right to request a hearing on the proposed action,
> (ii) any time limit (of not less than 30 days) within which to request such a hearing, and
>
> (C) a summary of the rights in the hearing under paragraph (3).

11

(2) Notice of hearing. If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating-

(A) the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) Conduct of hearing and notice. If a hearing is requested on a timely basis under paragraph (1)(b)--

(A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)--

(i) before an arbitrator mutually acceptable to the physician and the health care entity,

(ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or

(iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved;

(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

(C) in the hearing the physician involved has the right-

(i) to representation by an attorney or other person of the physician's

12

choice,

      (ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof,

      (iii) to call, examine, and cross-examine witnesses,

      (iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and

      (v) to submit a written statement at the close of the hearing; and

    (D) upon completion of the hearing, the physician involved has the right-

      (i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendations, and

      (ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

A professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3). 42 U.S.C. §11112(b).

Mercy failed to follow the requirements of §11112(b), specifically, the record shows delays because Dr. Blume was not allowed to bring his attorney into a hearing. However, as

13

stated above, this does not preclude immunity in itself.

In order to rebut the presumption that the hospital met the third element of HCQIA, Dr. Blume must show that a reasonable juror looking at the facts in the light most favorable to him, would find that he has shown by a preponderance of the evidence that the professional review process used by the hospital did not provide him adequate notice and hearing procedures or other procedures fair to him under the circumstances. *See* <u>Sugarbaker</u>*,* 190 F.3d at 912. Dr. Blume has the burden of overcoming the presumption of immunity by showing that the review process was not reasonable. <u>Meyers v. Columbia/HCA Healthcare Corp.</u>, 341 F.3d 461, 468 (6th Cir. 2003).

In <u>Sugarbaker</u>, Dr. Sugarbaker "agreed to a full, retrospective review and concurrent monitoring of his cases." <u>Sugarbaker</u>, 190 F.3d at 909. St. Mary's hospital informed Dr. Sugarbaker of his right to request a hearing, and Dr. Sugarbaker properly requested a hearing. <u>Id.</u> at 909. The Ad Hoc Committee held a hearing permitting Dr. Sugarbaker to present evidence and expert testimony and to cross examine the executive committee's representative. <u>Id.</u> Thereafter, the Ad Hoc Committee unanimously voted to remove the precautionary

14

suspension due to the lack of information.  Id.

The Court stated that an executive committee later held a hearing for six (6) hours.  Id.  Dr. Sugarbaker was again permitted to present evidence of his own behalf to respond to questions and to cross examine adverse witnesses.  Id.  After this hearing, the executive committee voted to permanently terminate Dr. Sugarbaker's privileges.  Id.  It should be noted that Dr. Sugarbaker had every opportunity to be present at the hearing, to present witnesses and to cross examine the hospital's witnesses.  This, of course, never happened or even came close to happening in Dr. Blume's case.

The Sugarbaker court throughly discussed the fact that there must be adequate notice and hearing procedures.  Id. at 915.  The court correctly sets out the requirements of the United States Code and concludes "[t]he failure to provide a physician with adequate notice and fair procedures precludes immunity under HCQIA."  Id.

Under the same factor, the court concluded that because of the multiple levels of review given Dr. Sugarbaker, "the potential for ex parte contacts in one phase of the peer review process does not detract from the overall fairness of the procedures employed in this case."  Id.  The court

15

concluded the hospital should be granted immunity under the HCQIA and granted a summary judgment, stating "[w]e hold Dr. Sugarbaker has failed to satisfy his burden of producing sufficient relevant evidence that would allow a reasonable jury to conclude by a preponderance of the evidence that St. Mary's is not entitled to statutory immunity under the HCQIA." Id. at 918.

As mentioned, contrary to Sugarbaker, Dr. Blume never received an adequate notice or fair procedures during a hearing. No hearing was ever conducted. This is the main reason why this Court, while mindful of the presumption, does not conclude that fair procedures were given to Dr. Blume or that as the defendant contends: "We admit that there was no hearing, but we provided Dr. Blume with alternative matters which accomplish the same thing." This is not factual, and there is nothing in the record to support the contention that there were any alternative matters which accomplished the same thing.

The defendant's citation of Sugarbaker is, as has been pointed out above, far from supportive of Mercy's position. Again, Dr. Blume had no hearing, nor any opportunity to present any evidence or cross examine as the Dr. Sugarbaker

16

did.

The defendant also cited, <u>Wayne v. Genesis Medical Center</u>, 140 F.3d 1145 (8th Cir. 1998) in support of Mercy's position that HCQIA immunity clearly attached to hospitals. This Court, as mentioned above, has reexamined its previous position that HCQIA did not apply to hospitals. This Court stands corrected. A hospital can receive HCQIA immunity, but only by being able to show that it has complied with the relevant HCQIA sections.

Defendants cite <u>Wayne</u>, to demonstrate the burden of proof in the HCQIA. Specifically, defendants state "In denying or refusing to consider Mercy's motions regarding HCQIA immunity, the Court has not correctly applied this burden of proof." As discussed in this Order on page 21 and 23, the facts show that Mercy did not comply with the Fair Hearing Plan and the bylaws, therefore the presumption has been rebutted. Since there were no fair procedures as set out above in Section 11112(a)(3), immunity is precluded.

Mercy sets out that the non-occurrence of a hearing does not deprive it of its presumption of immunity under HCQIA. Mercy argues that the second clause of §11112(a)(3) should give Mercy immunity under the HCQIA. As set out above, this

17

clause states, "after adequate notice and hearing procedures are afforded to the physician involved **or after such other procedures as are fair to the physician under the circumstances**." The plaintiff has demonstrated through witness testimony and a chronological presentation of facts that there were no other procedures presented to Dr. Blume that were fair to him under the circumstances.

The only thing that the defendant did was repeatedly ask Blume in correspondence, "when do you want a hearing?" Blume had early on asked for a hearing. There is nothing in the rules that require a second request. The record clearly shows Blume wanted a hearing during the pertinent time periods the jury was allowed to consider.

This Court listened carefully and never heard anything from Mercy that would show that they even attempted other procedures that were fair to Dr. Blume under the circumstances. This is not incorrectly placing a burden on Mercy. As mentioned, the record shows that the plaintiff proved that Mercy did not do any "other procedures as were fair to Dr. Blume under the circumstances." Therefore, Mercy is not entitled to immunity under this clause.

### iv.  <u>Wahi v. Charleston Area Medical Center</u>

The defendants state that the <u>Wahi v. Charleston Area</u> <u>Med. Center</u>, 453 F. Supp. 2d 942 (S.D. W.Va. 2006), is a timely decision that summarizes the case for immunity for hospitals and for all practical purposes is controlling in this case. In <u>Wahi</u>, it was found that the hospital was entitled to HCQIA immunity despite the fact that no hearing was held regarding the suspension of Dr. Wahi's privileges. <u>Wahi</u>, 453 F. Supp. 2d at 954. <u>Wahi</u> is, of course, not binding on this Court, but is an insightful case that includes many of the same issues this Court is addressing. However, there are differences between Dr. Wahi and Dr. Blume's circumstances that this Court finds makes <u>Wahi</u> not as effective as Mercy urges.

First, Dr. Wahi "was informed and fully aware of his rights, the hospital policies, and the charges and evidence the hospital had against him." <u>Id.</u> at 954. The Court also stated "Dr. Wahi was provided with notice of upcoming committee meeting, the nature of the charges against him and outlined the rights and remedies to him." <u>Id.</u> at 956. As mentioned above, this was not true for Dr. Blume. Mercy, for an extended period, even refused him access to the incident reports that were the basis for his suspension.

19

Second, part of the <u>Wahi</u> decision was based on the fact that under West Virginia law, unless there is an express language to the contrary, medical staff by-laws do not constitute a contract between the hospital and the physician. This is true in West Virginia, but it is not true in Iowa. Compare <u>Wahi</u>, 453 F. Supp. 2d at 955-56 ("The hospital is bound by The Fair Hearing Procedural provisions contained in the Medical Staff Bylaws but this does not transfer the Bylaws into a contract") <u>and</u> <u>Islami v. Covenant Med. Ctr.</u>, 822 F. Supp. 1361, 1371 (N.D. Iowa 1992) ("[M]edical staff by-laws create a contractual relationship.").

Third, the <u>Wahi</u> court reiterates that the doctor has the burden to overcome the presumption of immunity, and finds that the fact that there was no hearing does not preclude immunity. "Dr. Wahi must show that a reasonable jury looking at the facts in the light most favorable to him would find that he has shown by a preponderance of the evidence that the professional review process used by the hospital did not provide him adequate notice of the hearing procedures or other procedures fair to him under the circumstances." <u>Wahi</u>, F. Supp. 2d at 953. As heretofore set out, Section 11112(a)(3) provides that a hearing is not the only way to fulfill this

20

requirement, it can also be met by "such other procedures as are fair to the physician under the circumstances provided." Id. at 952. One means that HCQIA provides to ensure that this prong has been met is for the hospital to fulfill the requirements of the HCQIA's safe harbor provision, as previously mentioned Section 11112(b). The Wahi court noted that the failure to meet all the provisions outlined in 11112(b) does not in itself constitute a failure to meet the adequate notice in hearing standards of subsection (a)(3). Id.

The court in Wahi is in effect holding that the hospital does not have to meet all of the provisions of section 11112(a)(3) or the safe harbor provision for immunity under the HCQIA. However, Dr. Blume can rebut the presumption that Mercy did meet these requirements and demonstrate there were no other procedures that were fair to himself under the circumstances provided. This Court has found that Dr. Blume has rebutted this presumption by showing that he did not get his rights, as set out below, that this Court looked to Mercy's own By-laws and Fair Hearing Plan as to what should be considered "adequate notice and hearing procedures," or what other procedures would be "fair to the physician under the

21

circumstances." The Fair Hearing Plan, Section 4.2, lists the rights of the parties. This states:

> During a hearing, each of the parties shall have the right to:
>
> (a) call and examine witnesses;
> (b) cross-examine witnesses called by the other party;
> (c) introduce exhibits;
> (d) question witnesses on matters relevant to the issues; and
> (e) rebut any evidence.

As heretofore set out, Dr. Blume was entitled a hearing, and he repeatedly requested documents for the hearing, including incident reports. He felt these were necessary to properly defend himself at the hearing. However, Mercy and its counsel were slow to turn any documents over, and repeatedly argued that Dr. Blume's requests were overly broad, which they were, because Dr. Blume was in the dark as to precisely what the evidence was and had to request enough to get the full picture. Because Dr. Blume did not have the documents he requested, he was not able to rebut any evidence against him. Dr. Blume was unaware of the evidence and was offered no opportunity to rebut the evidence, as required by Mercy's Fair Hearing Plan. This Court is not suggesting the peer review proceedings need to comport like regular trials in a court of law, however, certain opportunities must be

22

available for Dr. Blume to investigate and rebut the charges against him. For a hearing to be fair, Dr. Blume must know what evidence Mercy will attempt to use against him and be able to mount a defense to the hospital's charges. Because Dr. Blume did not have the opportunity to know about and rebut any evidence against him, this Court is persuaded that Dr. Blume did not have adequate notice and hearing procedures nor were these procedures fair to Dr. Blume under the circumstances.

This Court does not find it necessary to address the fourth requirement, as set out in full on page 8 of this ruling, as we have found that the third requirement was not met.

Mercy's failure to meet the third requirement of §11112(a) defeats Mercy's claim for immunity under the HCQIA. No hearing or other fair procedures were afforded Dr. Blume.

### 2. Breach of Contract Claim

At the argument in relation to the post-trial motions, counsel for the defendant stated that he felt that this Court had not clearly set out why it had granted a summary judgment on the issue of breach of contract.

In its Order of May 8, 2006, on page 7, the Court stated

as follows:

> The issue now before the Court based on its
> previous summary judgment ruling is that
> the hospital, complying with its Bylaws,
> said, "Dr. Blume, you are done practicing
> here, but we will give you a hearing."
> Then, later, they wrote a letter saying,
> "Dr. Blume, you are done performing
> medicine here and you do not get a
> hearing."

Further, on page 7, this Court then stated as follows:

> What the jury will be asked to decide is,
> "did he get a timely hearing or did he not"
> and "if he didn't, whose fault was it?"

It should be remembered by the reviewing court that this
Court sustained the defendants' motion to bar damage recovery
for the first several weeks after the suspension because under
the terms of the Fair Hearing Plan, it provided that there was
a fifteen day delay before a physician was "entitled" to a
hearing and a thirty day delay after a request for a hearing.
This Court also barred any recovery during the entire time of
the "injunction", some eighteen months.

In the Fair Hearing Plan, Exhibit 18, on page 13, under
Article V, it states as follows:

> (b) Special Hearings. If the affected
> petitioner desires to be represented by an
> attorney at any special hearing or at any
> appellate review appearance pursuant to the
> provisions of Article IV of this Plan, the
> request for such hearing or appellate

24

review must so state. The affected
Practitioner shall have an unqualified
right to be represented by an attorney at
any such special hearing or appellate
review appearance. If the Affected
Practitioner chooses to be so represented,
the executive committee of the board may
also be represented by an attorney at the
hearing.

In this Court's Order of April 19, 2005, on page 7, in
footnote 3, it states as follows:

In the letter of December 2, 1998, or in
Deborah VandenBrock notified Blume of a
summary suspension. The fifth paragraph
states: "Should this suspension remain in
effect for 15 days or more, you are
entitled to special hearing procedures as
outlined in the fair hearing plan, Article
IV, a copy of which is enclosed."

(Dep. Exhibit 3).

The record clearly shows that Dr. Blume asked for a
hearing. He was "entitled" to a hearing as set out above.
There is nothing in the Fair Hearing Plan that sets out that
he must ask for such a hearing more than once. The defendant,
as mentioned, argues that whether or not there was a
contractual breach should have been a jury issue for the very
limited time periods that this Court allowed the jury to
consider possible damages which were from January 14, 1998 to
June 11, 1999, and during the second period which ran from
December 28, 2000, to July 11, 2001.

25

Under The Fair Hearing Plan, Exhibit 18, entitled, "Rights of the Parties", it clearly states that each party shall have the right to: (A) call and examine witnesses; (B) cross examine witnesses called by the other party; (C) introduce exhibits; (D) question witnesses on matters relevant to the issues; and (E) rebut any evidence.

In a breach of contract claim, the complaining party must prove:

(1) the existence of a contract,

(2) the terms and conditions of the contract,

(3) that it has performed all of the terms and conditions required under the contract,

(4) the defendant's breach of the contract in some particular way, and

(5) that plaintiff has suffered damages as a result of the breach. <u>Iowa-Illinois Gas & Elec. Co. v. Black & Veatch</u>, 497 N.W.2d 821, 825 (Iowa 1993).

Under traditional contract principles and Iowa law, the party asserting the breach has the burden of proving the breach. <u>Iowa-Illinois Gas & Elec. Co.</u>, 497 N.W.2d at 825.

Addressing these requirements, this Court begins by finding that there was a contract between the parties—the By-

Laws, and the terms of the contract are plain and clear. [Exhibit 18, The Fair Hearing Plan]. *See* Islami v. Covenant Medical Ctr., 822 F. Supp. 1361, 1371 (N.D. Iowa 1992) ("[M]edical staff by-laws create a contractual relationship.") Moreover, the terms and conditions of the contract are clear.

The third requirement is that Dr. Blume has performed all of the terms and conditions required under the contract. Dr. Blume properly and timely requested the hearing he was entitled to.

In the letter of December 2, 1998, Deborah VandenBroek for Mercy notified Dr. Blume of his summary suspension. The fifth paragraph states: "Should this suspension remain in effect for 15 days or more, you are entitled to Special Hearing Procedures as outlined in the Fair Hearing Plan, Article No. IV, a copy of which is enclosed." Dr. Blume properly asked for the hearing he was entitled under the Fair Hearing Plan. The Fair Hearing Plan, Section 2.2 states; "The Affected Practitioner shall have thirty (30) days following the date of the receipt of such notice within which to request a hearing." The record clearly shows that Dr. Blume timely asked for a hearing. He was entitled to a hearing as set out above. There is nothing in the Fair Hearing Plan that sets

27

out that he must ask for such a hearing more than once.

As mentioned, Mercy never gave Dr. Blume a hearing he was entitled under the Fair Hearing Plan; and as a result, Dr. Blume was damaged. During arguments before this Court, Mercy claimed they would have given Dr. Blume a hearing any time that he made a request for one. It became clear during these arguments that the contentions against Dr. Blume and that incidents reports had been made by hospital staff setting out exactly what the complaints against the plaintiff were. The defendant could have sent the plaintiff's counsel the incident reports after their first request for information. Instead, Mercy argued for many months saying that the request for the basis of why we have suspended the plaintiff is way too broad.

Dr. Blume's damages were for the period from January 14, 1999, through June 11, 1999, and the period from January 28, 2000, through July 11, 2001, when Dr. Blume was barred from using the hospital facilities. These time periods do not, by order of this Court, include the "injunction period," the approximate 18 month period during which Dr. Blume had filed an injunction preventing a hearing against Mercy in Woodbury County. Dr. Blume was also not allowed to recover for the first several weeks after the suspension began because under

28

the terms of the Fair Hearing Plan, it provided a delay before the aggrieved physician was "entitled" a hearing.

The defendant, as mentioned, argues that whether or not there was a contractual breach should have been a jury issue for the very limited time period that this Court allowed the jury to consider possible damages. This Court, in relation to these post-trial motions, found that the Mercy, despite the entitlement to a hearing under the Fair Hearing Plan, conducted itself in a way that demonstrated that Mercy had not been reasonable under the circumstances. As mentioned, Dr. Blume had absolutely no opportunity during any stage of the proceedings to call and examine witnesses, cross examine witnesses, introduce exhibits, question witnesses on matters relevant to the issues, and rebut any evidence. The defendant clearly did not give the plaintiff any reasonable alternative to a hearing that would excuse the defendant of the failure provided the "entitled" hearing. This Court was persuaded and still is persuaded that there was no factual issue barring an award of summary judgment to the plaintiff on the issue of breach of contract.

It is clear that Mercy breached the contract. Therefore, it was appropriate for this Court to grant summary judgment

finding there was a breach of contract by Mercy.

### 3. Sufficiency of Evidence

Mercy argues that Mercy is entitled to judgment as a matter of law because the evidence is insufficient to support the jury's verdict. This Court finds that the jury findings were appropriate and should not be changed without strong reasons. <u>Canny</u>, 439 F.3d at 899-900.

Mercy further alleges that the evidence is insufficient to support the jury's verdict because, as Mercy alleges, Dr. Blume's expert based his damages on unknown collection rates and speculation. However, in <u>Olson v. Nieman's, Ltd.</u>, 579 N.W.2d 299, 309 (Iowa 1998), the Iowa Supreme Court noted,

> Damages are denied where the evidence is speculative and uncertain whether damages have been sustained. <u>Orkin Exterminating Co. v. Burnett</u>, 160 N.W.2d 427, 430 (Iowa 1968). But "[if] the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." <u>Id.</u>
>
> Thus, some speculation is acceptable. On this point, we have noted that 'while it may be hard to ascertain...a loss with preciseness and certainty, the wronged party should not be penalized because of that difficulty.' <u>Bangert v. Osceola County</u>, 456 N.W.2d 183, 190 (Iowa 1990). In addition, if an expert makes some flawed assumptions in testifying, that fact goes to the weight to be given the opinion, not

30

> to its admissibility. <u>Preferred Mktg.</u>
> <u>Assocs. v. Hawkeye Nat'l Life Ins. Co.</u>, 452
> N.W.2d 389, 393 (Iowa 1990). On the other
> hand, overly speculative damages cannot be
> recovered. <u>Jamison v. Knosby, 423 N.W.2d</u>
> <u>2, 6 (Iowa 1988)</u>.

As noted above, Dr. Blume was damaged by Mercy's actions. However, the amount of damages for not being able to perform operations at Mercy is unknown. Mercy alleges that Dr. Blume's damage calculations are based on conjecture and best guesses. This Court is persuaded that there was a reasonable basis from which the amount of damages can be inferred or approximated.

Dr. Blume's expert relied on past statistical data of Dr. Blume's practice and the testimony of Monica Ensminger, who testified to the collection rates of Dr. Blume's practice. Also, Mercy vigorously cross-examined her on this point, and presented an expert to testify to the common collection rates of physicians in Sioux City. Mercy's own expert testified that Dr. Blume's damages were roughly $30,000.00. The damage computations from each expert provided a reasonable basis for the jury to base their damage awards. The award was not overly speculative, and the weight of each expert's testimony was taken into consideration by the jury.

Mercy also contends that Dr. Blume should not be awarded any damages during the injunction period. The fact that Dr. Blume held up any hearing from January 14, 1999, to June 11, 1999, was recognized by the Court and the jury was clearly barred from awarding damages for that period.

**4.  Abuse of Discretion**

Mercy argues the Court abused its discretion by excluding certain evidence and by failing to give Mercy's affirmative defense instructions. Mercy proposed four affirmative defenses and a mitigation of damages final jury instruction which were based on the Iowa Civil Jury Instructions.

**A.  Jury Instructions**

**i.  Impossibility of Performance and Prevention of Performance**

Mercy argues their impossibility of performance and prevention of performance instructions should have been included in the final jury instructions. Both jury instructions came from defendant's proposed instructions. Number 16, impossibility of performance, read

> Impossibility of performance means extraordinary circumstances which:
>
> 1. Prevent a person from carrying out the terms of the contract.

32

2. Could not reasonably have been anticipated; and

3. Are not the fault of that party.

Performance is not excused if the party who promised to perform created the circumstances which made performance impossible, or just because performance became economically burdensome or unattractive.

The proposed instruction number 17, prevention of performance, read:

Performance under a contract is excused if the other party prevents it or makes it impossible.

As mentioned, there was a time period during which Dr. Blume made performance impossible. Dr. Blume filed an "injunction" in Woodbury County to prevent Mercy from holding a hearing[1]. The Court recognized this, and barred the jury from considering any damages for the time period during which Dr. Blume had an injunction. Dr. Blume was only allowed to recover damages from the time periods from January 14, 1999, to June 11, 1999, and December 28, 2000, to July 11, 2001. This, of course, excludes the time period of the injunction. Furthermore, there is no competent evidence that Mercy was

---

[1]

The record shows that legally the injunction may not have technically been in place. However, both sides proceeded as though there was an injunction in force.

33

prevented from holding a hearing during the time periods set out above.

### ii.  Waiver of Performance

Mercy also argues that proposed instruction number 18, waiver of performance, should have been included.  This instruction read:

> The right to insist on performance can be given up. This is known as a "waiver."  A waiver may be shown by actions, or you may conclude from Dr. Blume's conduct and the surrounding circumstances that a waiver was intended.  The essential elements of a waiver are the existence of a right, knowledge of that right, and an intention to give it up.

Mercy alleges this instruction should have been given. However, there is no evidence that Dr. Blume waived his right to a hearing.  The fact that there was an injunction has been discussed above.  This Court does not consider that period as a waiver.  Mercy failed to present any evidence on this fact, and therefore, was not entitled an instruction on waiver.

### iii.  Mitigation of Damages

Mercy also argues that proposed instruction number 19, mitigation of damages, should have been included.  This proposed instruction read:

> It is the duty of any person who has been injured to use reasonable diligence and

34

reasonable means, under the circumstances,
to prevent the aggravation of such injury
to act in a way that brings about a
recovery from such injury and to take
advantage of any reasonable opportunity he
may have to reduce or minimize loss or
damage.

He is required to seek out or take
advantage of a business or employment
opportunity that was reasonably available
to him under all the circumstances shown by
the evidence, including timely pursuit of
a fair hearing.  You should reduce the
amount of plaintiffs' damages, by the
amount he could have reasonably realized if
he had taken advantage of such business or
employment opportunity or by exercising
timely pursuit of a fair hearing, but did
not do so.

Mercy insinuated Dr. Blume could have operated at St.
Luke's Hospital in Sioux City, Iowa, and had no damages.
Since Mercy contends this fact, it is their burden to call a
witness from St. Luke's to say this mitigation was possible.
See Schumacher v. Tyson Fresh Meats, Inc., 434 F. Supp. 2d
748, 754 (D. S.D. 2006).  Mercy produced no witness who
testified to this fact, and therefore, Mercy was not entitled
to a mitigation of damages defense.

**B.  Exhibits Critical of Dr. Blume**

Mercy argues that the Court erred in not including any
evidence that was critical of Dr. Blume.  Mercy states this
painted an incomplete picture for the jury, one that was void

35

of reality. Mercy wanted to tell this jury that Dr. Blume was a bad doctor who had all kinds of violations that were being considered by the Iowa Medical Association. They also wanted to tell the jury of the bad things he had done which required Mercy to suspend him. None of these contentions were ever proved by the Iowa Medical Association or Mercy. Dr. Blume surrendered his Iowa license before any final hearing and received no damages from the jury after that date. Mercy never gave him a hearing. Their decision was a one-sided affair with no proper procedure under Mercy's "Fair Hearing Plan." Mercy cannot have the jury considering "we didn't give him a fair hearing because he is a bad doctor."

Mercy argues that they should have been able to tell the jury that if prospective patients had known all the bad publicity he was getting, they never would have come to him. He would then have had fewer patients, fewer operations and less damages. The evidence showed that many of Dr. Blume's patients came from referrals by doctors who had heard him speak at seminars and had patients who were getting no relief from "usual" operations. Many never would have seen the local papers as they were from far away locales. As mentioned, any evidence that Dr. Blume was involved in an effort by the Iowa

medical authorities to terminate his right to practice medicine was unproved allegations as there had been no final decision against him. The record shows he surrendered his medical license on July 11, 2001, and the Court's instructions to the jury clearly barred any award of damages after that date.

None of these "critical of Dr. Blume" exhibits had anything to do with whether or not Mercy abided by the U.S. Code and its "Fair Hearing Plan."

IV. **CONCLUSION**

**IT IS THEREFORE HEREBY ORDERED** that defendant's renewed motion for judgment as a matter of law or in the alternative for a new trial (Docket No. 217) is **denied.**

**IT IS SO ORDERED** this 14th day of March, 2007.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

37